IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:18 CV 285

| | |
|---|---|
| SHARONDA N. CANNON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of the Social<br>Security Administration,<br><br>Defendant. | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 9, 11), which have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Following a review of the record, the parties' briefs, and relevant legal authority, the undersigned respectfully recommends that Plaintiff's motion for summary judgment be granted and the Commissioner's motion for summary judgment be denied.

I.  **Procedural History**

On October 9, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income. Transcript of Administrative Record ("AR"), pp. 221-227 & 228-234.

Plaintiff's claims were denied initially on February 3, 2015, and upon reconsideration on June 9, 2015. AR pp. 75-110; 111-146.

1

Plaintiff thereafter filed a written request for a hearing and a hearing was held on July 17, 2017, in Charlotte, North Carolina, where Plaintiff appeared and testified. AR pp. 34-74.

On October 23, 2017, the Administrative Law Judge ("ALJ") issued an unfavorable decision. AR pp. 14-28. The Appeals Council denied Plaintiff's request for review of the ALJ's decision. AR pp. 1-5.

On October 8, 2018, Plaintiff filed the instant action. See, Doc. 1. Accordingly, Plaintiff exhausted her administrative remedies before timely filing this action and the ALJ's decision is the Commissioner's final decision for purposes of judicial review. See 20 C.F.R. § 404.981.

## II. The Five Step Evaluation

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to apply a five-step sequential evaluation to each claim for benefits. 20 C.F.R. §§ 404.1520; 416.920. In this process, the Commissioner considers each of the following: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or exceed the severity of one or more of the

impairments listed in Appendix I of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her, age, education, past work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520, 416.920; Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001); Johnson v. Barnhart, 434 F.3d 650, 653 n.1 (4th Cir. 2005) (per curiam).

The burden of proving disability rests with the claimant through the first four steps of this process. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

### III. The ALJ's Decision

Here, the ALJ determined that Plaintiff had the severe impairments of "obesity, history of right knee ACL (anterior cruciate ligament) tear, history of asthma, acid reflux, schizoaffective disorder, generalized anxiety disorder, social anxiety, and OCD (obsessive compulsive disorder) (20 C.F.R. §§ 404.1520(c) and 416.920(c))." AR, p. 19. At step three of the sequential analysis, when considering Plaintiff's mental impairments, the ALJ found, *inter alia*, that Plaintiff had moderate limitations in "concentrating, persisting, or maintaining pace." AR p. 20.

The ALJ further found that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can frequently kneel, crouch and crawl. She must avoid concentrated exposure to fumes. She can perform simple, routine and repetitive tasks in a stable environment at a nonproductive pace with occasional public contact. She would be off task 9% of an eight-hour workday. Her concentration is greater than two hours out of an eight-hour workday.

AR p. 21.

Utilizing this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, but that Plaintiff could perform other work, including the representative occupations of garment sorter, router, and laundry classifier, such that Plaintiff was not disabled from December 2, 2012 (Plaintiff's alleged disability onset date) through October 23, 2017 (the date of the ALJ's decision). AR pp. 27-28.

## IV. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applied the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (quoting Mastro, 270 F.3d at 176). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal

4

quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and applies the law correctly. Id.

## V. Analysis

### A. The ALJ's Treatment of Nurse Triplett's Opinion

Plaintiff's first argument is that the ALJ erred in his consideration of the opinion offered by Ashley Triplett, a mental health nurse practitioner. Pl.'s Mem. (Doc. 10) at 7-18.

#### 1. Nurse Triplett as a Medical Source

Plaintiff argues that Nurse Triplett's opinion should not have been discounted simply because she was not "an acceptable medical source." More specifically, Plaintiff contends that Nurse Triplett's opinion was not offered to provide diagnoses to determine whether Plaintiff's impairments were medically determinable, but rather to provide information on the functional limitations arising from impairments that were diagnosed by acceptable medical sources and accepted as severe by the ALJ. Doc. 10 at 10.

5

The ALJ noted that Nurse Triplett is not an acceptable medical source, but he did not say he was according little weight to her opinion *because of* her status in this respect. Instead, her opinion was given little weight because, in the ALJ's view, that opinion was inconsistent with Plaintiff's treatment records. AR p. 25 ("Little weight is accorded to this opinion from a treating source who is an unacceptable medical source because the opinion is inconsistent with the treatment records.").

### 2. Weight Given to Nurse Triplett's Opinion

Plaintiff next argues that the ALJ's finding that Nurse Triplett's opinion should be given little weight as being inconsistent with Plaintiff's medical records was incorrect. Specifically, Plaintiff argues that Nurse Triplett's opinion was consistent with Plaintiff's other records, and that any purported inconsistencies do not warrant discounting Nurse Triplett's opinion. Doc. 10 at 9-17.

"An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up some 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted); see also 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (providing an example of other factors to be considered when weighing a medical opinion); 20 C.F.R. §§ 404.1527(c)(3),

416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Treating sources are generally given controlling weight with respect to the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, when a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. SSR 96-2p, 1996 WL 374188, at *4. In such a case, the treating source's opinion must be weighed and evaluated pursuant to the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6), 416.927(c)(2)(i)-(c)(6). Ivey v. Berryhill, No. 3:18-CV-075-DCK, 2019 WL 1413756, at *7 (W.D.N.C. Mar. 28, 2019); Bush v. Berryhill, No. 1:17CV872, 2019 WL 699349, at *3 (M.D.N.C. Feb. 20, 2019).

On June 21, 2017, Nurse Triplett completed a Mental Medical Source Statement ("Mental MSS") (AR pp. 480-485), in which she noted the following:

- That Plaintiff was seen by Nurse Triplett on February 8, 2017, April 11, 2017, May 3, 2017, and June 21, 2017 as well as by another provider at the same clinic on other dates. AR p. 480.

- That, with respect to psychological diagnostic categories, Plaintiff had schizoaffective disorder (bipolar type) and generalized anxiety disorder. Id.

- That Plaintiff had experienced little to no improvement from treatment and that her medication compliance had "been difficult." Id.

- That side effects from her medications included lethargy, sedation, and dizziness. Id.

- That Plaintiff had worsening depression, flat affect, and was not attending to hygiene unless her family required it. Id.

- That Plaintiff's prognosis was guarded. Id.

In a separate section of the Mental MSS, Nurse Triplett assessed Plaintiff's mental abilities and aptitudes needed to do unskilled work and found, for each category, that Plaintiff was either seriously limited, unable to meet competitive standards, or had no useful ability to function. AR p. 482.

Nurse Triplett also noted the following:

> [Plaintiff] has [auditory and visual hallucinations] and is extremely depressed the majority of the time. She has difficulty with being distracted by positive stimuli internally and is unable to maintain a full time or part time job at this time. She continues to struggle making appointments and medication compliance consistently. Her family is having to force her to perform hygiene needs after several days of not caring for her [activities of daily living].

> Id.

Nurse Triplett concluded that Plaintiff's impairments or treatment would cause her to miss work more than four days a month. Id.

In his ruling, the ALJ discussed Plaintiff's medical history at length, and made the following statements regarding Nurse Triplett's Mental MSS:

> Little weight is accorded to this opinion from a treating source who is an unacceptable medical source because the opinion is inconsistent with the treatment records. Ms. Triplett reported that the claimant experienced medication side effects, but the claimant was often off her medication, or she denied medication side effects. See Exs. 8F, 11F. Additionally there is no evidence that Ms. Triplett referred the claimant for intensive outpatient or inpatient treatment. The claimant's treatment was minimal and conservative, which is inconsistent with the work preclusive limitations that Ms. Triplett imposed. When the claimant presented for primary care and emergency room treatment, her mental symptoms were either minimal or non-existent. See Exs. 9F, 10F/5, 12F/3.

AR p. 25.

That is, the ALJ made specific reference to what he viewed as being inconsistencies regarding medication side effects, intensity of treatment, and Plaintiff's mental symptoms.

The ALJ also concluded that Nurse Triplett's opinion was inconsistent with the record as a whole. Id. In that regard, the record contains opinions from: Walter H. McNulty, Ph.D., who evaluated Plaintiff and opined that she appeared capable of performing manual tasks (AR p. 382); Patricia A. Clark, Psy.D., a record reviewer, who concluded that Plaintiff may have some deficits

9

in sustained concentration, but should be capable of carrying out short and simple instructions and maintaining attention and concentration for 2 hours at a time, as is required for the completion of simple work-related task (AR p. 105); and Richard Kaspar, Ph.D., record reviewer, who opined that Plaintiff's mental impairments imposed work-related limitations, but that she was not precluded from performing all work (AR p. 124).[1]

In sum, the ALJ's explanation for discounting Nurse Triplett's opinion is supported by substantial evidence in the record and based on the correct application of the law.[2]

## B. The RFC

Next, Plaintiff argues that the ALJ failed to account for or explain all the limitations caused by Plaintiff's mental impairments. Doc. 10 at 18-22. Specifically, Plaintiff contends that the ALJ failed to explain the term "nonproductive pace" or describe how he determined that Plaintiff would be off task 9% of the time and, consequently, "it is unknown if these limitations

---

[1] Dr. Clark and later Dr. Kaspar also stated that Plaintiff "was suspected of embellishing symptoms in the context of a disability exam," was "alleging auditory hallucinations in [the] form of a man's voice who tells her what she can and cannot do," and was "not credible." AR pp. 83, 119.

[2] Plaintiff also argues that by failing to accommodate or reject the limitations described by Nurse Triplett without proper explanation, the resulting RFC is incorrect. Doc. 10 at 17-18. As this argument is dependent upon a finding that the ALJ improperly discredited Nurse Triplett's opinion, and since the undersigned has not so found, this argument is not addressed. The RFC is deficient, though, for other reasons, as discussed below.

properly account for [Plaintiff's] moderate restrictions in concentration, persistence, or pace." Id. at pp. 18-19.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). SSR 96-8p, 1996 WL 374184 (July 2, 1996), provides that an ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Id. at *7. The Commissioner is responsible for determining the claimant's RFC based on all the relevant evidence. Johnson, 434 F.3d at 653.

In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). An ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Monroe, 826 F.3d at 189; see also, Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). With respect to the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his other work-related abilities on a function-by-function basis[.]" SSR 96-8p, 1996 WL 374184, at *1.

The Fourth Circuit has held that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled

11

work.'" Mascio, 780 F.3d at 638. In the wake of Mascio, district courts have reached varying conclusions as to whether additional limitations in an RFC sufficiently account for a moderate limitation in concentration, persistence, or pace. See e.g., Allen v Berryhill, No. 3:16-CV-851-RJC, 2018 WL 1175231, at * 4 (W.D.N.C. March 6, 2018). Here, however, the question is not whether the additional limitations of "nonproductive pace" and being "off task 9% of an eight-hour workday" imposed in Plaintiff's RFC adequately account for her moderate difficulties in concentration, persistence, and pace, but rather whether the ALJ failed to build a "logical bridge" from the evidence in the administrative record to those specific limitations.

In Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019), the Fourth Circuit found that an ALJ's analysis of a plaintiff's RFC contained "too little logical explanation for [the court] to conduct meaningful appellate review." The Thomas court was particularly troubled by four issues, one of which was that the ALJ stated that the plaintiff could not perform work "requiring a production rate or demand pace" but failed to provide enough information for a reviewing court to determine the meaning of those terms. 916 F.3d 307, 312. Importantly, the Thomas court noted in a footnote that although the plaintiff argued that the RFC limitation to jobs that did not require a "production rate" or "demand pace" did not account for her moderate limitations in concentration, persistence, and pace, the court declined to resolve the question

12

of whether such a limitation was sufficient since the ALJ's evaluation of the plaintiff's mental impairments contained too little explanation to allow for a meaningful review. The court went on to note that "[o]n remand, the ALJ will need to establish for how long, and under what conditions, [the plaintiff] is able to focus her attention on work activities and stay on task at a sustained rate." Id. at 312, n. 5 (internal citations and quotations omitted).

In Richardson v. Berryhill, No. 5:15-cv-173-RJC-DSC, 2019 WL 1354042 (W.D.N.C. March 26, 2019), where an ALJ "provided ample discussion of how [a plaintiff's] mental impairments impact[ed] her ability to perform work – related tasks," an RFC that limited a plaintiff to a nonproduction pace was found to pass "Thomas muster because the ALJ contextualized and explained how he reached his conclusion…." 2019 WL 1354042 at *3. On the other hand, in Kilgo v. Saul, 3:13-CV-312-RJC-DSC, 2019 WL 3719609 (W.D.N.C. Aug. 7, 2019), the district court concluded that "no logical bridge was built between [the ALJ's] conclusion and the evidence, and therefore, the RFC assessment fail[ed] under the Thomas standard." 2009 WL 3719609 at *4.

The undersigned finds that the ALJ's opinion in the instant case more closely resembles the ALJ's opinion in Kilgo. The RFC in Kilgo stated in part:

> [She] can perform simple, routine, repetitive tasks, in a stable environment at a nonproductive pace. [She] would be off tasks for 9% of the time for an eight-hour workday.

13

The RFC in the instant case is similar and states in part:

> She can perform simple, routine and repetitive tasks in a stable environment at a nonproductive pace with occasional public contact. She would be off task 9% of an eight – hour workday. Her concentration is greater than two hours out of an eight-hour workday.

AR p. 21.

In Kilgo, the ALJ provided little explanation as to why the plaintiff could perform medium work at a nonproductive pace and adopted the physician's testimony without explaining why, merely summarizing and restating the testimony by the plaintiff and the plaintiff's physician before making his conclusions. Kilgo, 2019 WL 3719609, at *4.

Similarly, here, the ALJ described at length Plaintiff's testimony, the testimony of Ms. Byrd, Plaintiff's medical evidence, and the opinion evidence, but did little to explain the basis for his conclusions in the RFC. Thus, as in Kilgo, the ALJ's conclusions are unsubstantiated; no medical records or evidence are cited as to what necessitates a "nonproductive pace" nor does the ALJ define what the term "nonproductive pace" means. Id. ("The ALJ points to no medical records or evidence as to what necessitates a 'nonproductive pace,' nor does he define what that term means.").

With respect to the possibility that Plaintiff would be off task 9% of an eight-hour workday, this limitation was included by the ALJ in a hypothetical scenario he posed to the VE. (AR pp. 70-71). However, the ALJ's opinion points

to no basis in the record for this reference. See Lovato v. Berryhill, No. 6:16-CV-00046-JR, 2017 WL 2371096, at *4 (D. Or. May 9, 2017), report and recommendation adopted sub nom. Lovato v. Berryill, No. 6:16 CV 0046-JR, 2017 WL 2369377 (D. Or. May 31, 2017) (court was unable to discern what substantial evidence supported ALJ's conclusion that plaintiff would be off task 9% of the time, beyond VE's testimony that larger percentage would necessitate finding of disability); Oliverson v. Berryhill, No. 2:16-CV-01538-KLS, 2017 WL 1381814, at *4 (W.D. Wash. Apr. 17, 2017) ("The Court also agrees with plaintiff that the ALJ failed to point to any evidence in the record—or offer any explanation—to support the limitation of being off task for up to 9% of the time. Accordingly, the ALJ erred here as well.").

In sum, because the ALJ has not established "for how long, and under what conditions, [the plaintiff] is able to focus her attention on work activities and stay on task at a sustained rate," Thomas at n. 5 (internal citations and quotations omitted), remand will be recommended.

## VI. Recommendation

Considering the foregoing, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 9) be **GRANTED**, and that the Commissioner's motion for summary judgment (Doc. 11) be **DENIED**.

Signed: December 23, 2019

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).